FILED
2022 Dec-14  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHARON WALLACE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:20-cv-02062-KOB** |
| **JUSTIN EBAUGH,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendants' motion for summary judgment. (Doc. 35). The case arises out of a vehicle collision where Defendant Justin Ebaugh, driving a tractor-trailer truck, rear-ended Plaintiff Sharon Wallace. Ms. Wallace alleges that the accident occurred because Mr. Ebaugh was negligent and wanton; she also alleges that Defendant Mercer Transportation Co. is vicariously liable for Mr. Ebaugh's conduct and independently liable for "negligent/wanton entrustment, hiring, training supervision, and/or retention." (Doc. 1-1).

Defendants moved for summary judgment on the wantonness claim against Mr. Ebaugh and the direct claims against Mercer. Defendants also "request an Order precluding Plaintiff from recovering any compensatory damages related to treatment . . . for any alleged injuries to her lower back/lumbar spine." (Doc. 35 at

1

1). Because Ms. Wallace has not pointed to evidence on which a reasonable jury could rely to find that Mr. Ebaugh acted wantonly or that he was incompetent, the court will grant Defendants' motion as to the wantonness claim against Mr. Ebaugh and the negligent hiring and entrustment claims against Mercer. Ms. Wallace has, however, provided sufficient evidence to create a genuine issue of material fact as to the cause of her lower back injuries; so the court will deny Defendants' motion for summary judgment as to damages related to Ms. Wallace's lower back injuries.

## I.   Facts

On November 19, 2019, Ms. Wallace was driving west on Highway 150 in Bessemer, Alabama. A car traveling in front of Ms. Wallace stopped abruptly to make a left-hand turn, causing Ms. Wallace to stop abruptly as well. Mr. Ebaugh, traveling behind Ms. Wallace, then collided with her vehicle from behind. Ms. Wallace did not recall how fast she was traveling prior to stopping or how fast Mr. Ebaugh was traveling behind her. (Doc. 35-3 at 15-16). Ms. Wallace also testified that she first saw Mr. Ebaugh "when he hit me" and that she did not see him at any point prior to that or "have any idea how closely he was following behind" her. (Doc. 35-3 at 20).

Ms. Wallace was treated on November 21, 2019 at Medplex Injury Clinic, where a nurse practitioner examined her and recommended physical therapy. Ms.

Wallace returned to Medplex on December 7, 2019 and saw Dr. Robert Agee. Because Ms. Wallace still had significant lower back pain, Dr. Agee ordered an MRI of her lumbar spine. The MRI showed severe arthritis and a protruding disk pressing on a nerve root at the fourth level of Ms. Wallace's lumbar spine. Dr. Agee ordered an epidural steroid injection, which only slightly lessened Ms. Wallace's pain. Dr. Agee then referred Ms. Wallace to Dr. Spain Hodges for a cervical opinion. Dr. Hodges recommended surgical intervention—a "lateral lumbar fusion at the third and fourth level with posterior instrumentation and fusion," carrying an approximate cost of $233,000. (Doc. 35-5 at 5-8). While the summary judgment record is not crystal clear on this point, the evidence suggests that Ms. Wallace has not yet undergone the surgery. *See, e.g.*, (doc. 35-5 at 8).

## II.    Legal Standard

### A.    Summary Judgment

A party moving for summary judgment must demonstrate the absence of any "genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets that burden, the burden shifts to the non-moving party to demonstrate that the case involves genuine issues of material fact. *See Clark v.*

*Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In doing so, the non-movant must point to evidence beyond the pleadings to designate "specific facts showing . . . a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). On summary judgment, the court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Sconiers v. Lockhart*, 946 F.3d 1256, 1260 (11th Cir. 2020). So, in evaluating this motion, the court views the evidence in the light most favorable to Ms. Wallace.

B.   <u>Wantonness</u>

Under Alabama law, wantonness is "Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). Because it "requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, [wantonness] is not to be confused with negligence (i.e., mere inadvertence)." *Valley Bldg. & Supply, Inc. v. Lombus*, 590 So. 2d 142, 144 (Ala. 1991) (citing *Lynn Strickland Sales & Serv., Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145 (Ala. 1987)). But wantonness does not require "a specific design or intent to injure the plaintiff." *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) (citing *Joseph v. Staggs*, 519 So. 2d 952 (Ala. 1988)). While wantonness is often a question for the jury, a court should not submit it to the jury where the record

4

contains no evidence from which a jury could reasonably conclude that a defendant acted wantonly. *See Alfa Mut. Ins. Co.*, 723 So. 2d at 1257 (wantonness claim "was not supported by the evidence and should not have been presented to the jury").

C.     Negligent Entrustment and Hiring/Training/Supervision

In Alabama, the elements of negligent entrustment are "(1) an entrustment (2) to an incompetent (3) with knowledge that he is incompetent, (4) proximate cause, and (5) damage." *Pollnitz v. Univ. of Ala. Bd. of Trustees*, No. 2:14-cv-00807-MHH, 2015 WL 4626882, *7 (N.D. Ala. 2015) (quoting *Thompson v. Mindis Metals, Inc.*, 692 So. 2d 805, 807 (Ala. 1997)). To make an entrustment, "one must retain either ownership of the property or dominion and control over it." *Thompson*, 692 So. 2d at 807 (citing *Land v. Niehaus*, 340 So. 2d 760, 762 (Ala. 1976)). An incompetent is one "likely because of his youth, inexperience, or otherwise to use [the entrusted property] in a manner involving unreasonable risk of physical harm to himself and others." *Dunaway v. King*, 510 So. 2d 543, 545-46 (Ala. 1987) (quoting *Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985)).

Negligent hiring, training, and supervision are essentially identical claims under Alabama law. *Southland Bank v. A & A Drywall Supply Co., Inc.*, 21 So. 3d 1196, 1215 n. 17 (Ala. 2008) (no distinction between wrongful training and wrongful supervision); *Univ. Fed. Credit Union v. Grayson*, 878 So. 2d 280, 291

(Ala. 2003) (discussing "negligent supervision and hiring" as a single claim).[1]

Regardless of how a plaintiff styles the claim, it requires that the plaintiff

"establish 'by affirmative proof' that the employer actually knew of the

incompetence [of the employee], or that the employer reasonably should have

known of it." *Burback v. BNSF Ry. Co., Inc.*, 963 F. Supp. 2d 1255, 1266 (N.D.

Ala. 2013) (quoting *Southland Bank*, 21 So. 3d at 1215-16).

### III.   Analysis

####   A.   Wantonness Claim Against Mr. Ebaugh

Because Ms. Wallace is unable to point to any evidence from which a jury

could reasonably infer that Mr. Ebaugh acted with conscious disregard for her or

others' safety, Mr. Ebaugh is entitled to summary judgment on the wantonness

claim. Ms. Wallace testified at her deposition that she did not see Mr. Ebaugh prior

to the collision and did not know how fast he was going or how closely he was

following her. (Doc. 35-3 at 15-16, 20). Without evidence on these points, Ms.

Wallace cannot point to any basis on which a jury could conclude that Mr.

Ebaugh's driving involved a conscious choice to drive in a manner that endangered

other drivers.

In her brief, Ms. Wallace emphasizes the requirement that a driver leave a

safe distance between himself and any vehicles in front of him, as well as Mr.

---

[1] For brevity, the court will refer to this claim simply as "negligent hiring."

Ebaugh's knowledge of this rule. (Doc. 54 at 3). Critically, however, she points to no evidence other than the fact of the collision itself to show that Mr. Ebaugh did not maintain a safe distance, much less that he did so consciously or recklessly rather than through mere negligence. A jury could reasonably infer from the collision alone that Mr. Ebaugh was following at an unsafely close distance, though it would not be compelled to reach that conclusion. But even if the jury inferred that Mr. Ebaugh was following too closely, that alone is insufficient for a finding of wantonness.

Unlike negligence, wantonness "requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission" and is therefore "not to be confused with negligence (i.e., mere inadvertence)." *Valley Building & Supply*, 590 So. 2d at 144. Evidence suggesting a violation of traffic laws does not by itself raise an inference of the consciousness required for wantonness. *See, e.g., Jinright v. Werner Enter., Inc.*, 607 F. Supp. 2d 1274, 1277 (M.D. Ala. 2009) ("failing to look to one's left before crossing a lane, while imprudent and likely negligent, is . . . not suggestive of the kind of knowledge of likely injury required by the consciousness standard applied to wantonness claims in Alabama"); *Gordon v. Schneider Nat. Carriers, Inc.*, 951 F. Supp. 207, 212 (M.D. Ala. 1996) (summary judgment granted on wantonness claim despite genuine issue of fact as to whether defendant was traveling at an unsafely high

speed). Thus, while Ms. Wallace may be able to show a genuine issue of material fact as to whether Mr. Ebaugh was following her too closely, a jury would still have no basis from the evidence in the summary judgment record to infer that he did so with a conscious disregard for safety rather than through mere negligence.

B.  <u>Negligent Entrustment and Negligent Hiring Claims Against Mercer</u>

Defendants argue that they are entitled to summary judgment on the negligent entrustment claim because Mr. Ebaugh owned the tractor-trailer rig and Mercer therefore did not "entrust" it to him. Defendants further contend that Ms. Wallace can point to no evidence creating a genuine issue of material fact as to Mr. Ebaugh's incompetence, an element required for both negligent entrustment and negligent hiring.

1.  *Negligent Entrustment*

Defendants offered uncontroverted evidence that Mr. Ebaugh, not Mercer, owned the vehicle, pursuant to a "lease purchase" arrangement. (Doc. 54-2 at 7, Doc. 54-4 at 3). Ms. Wallace argues that Mercer nevertheless "entrusted" the vehicle to Mr. Ebaugh because it "maintained liability insurance on the vehicle, received a percentage of the revenue generated, inspect[ed] the tractor-trailer per federal regulations at least two times a year, and Defendant Ebaugh operated the tractor-trailer under Mercer's 'DOT' authority." (Doc. 42 at 21-22).

All the connections that Ms. Wallace draws between Mercer and the vehicle, however, fall far short of "dominion" or "control," which a defendant must maintain to be deemed capable of "entrusting" property to another. *Thompson*, 692 So. 2d at 807. *See also Lewis v. Linkamerica Corp.*, 2009 WL 10704903, *2 (N.D. Tex. Dec. 16, 2009) (granting summary judgment to defendant trucking company on negligent entrustment claim where plaintiffs had "not raised a material fact question regarding whether Defendant owned the tractor trailer" driven by the defendant's employee). Mercer's safety director, Leonard Dunman, testified that drivers bring their own trucks, accept or decline routes that Mercer offers to them, and "take the tractor-trailer with them" if they leave Mercer. As Mr. Dunman explained, "They're in control. It's their tractor-trailer." (Doc. 35-1 at 4). Ms. Wallace offers no evidence to contradict Mr. Dunman's account of the relationship, which demonstrates that Mr. Ebaugh, not Mercer, had "dominion" and "control" of the tractor-trailer. No genuine issue of material fact exists regarding whether Mercer entrusted the tractor-trailer to Mr. Ebaugh under Alabama law.

Ms. Wallace does not expressly argue alternatively that Mercer entrusted its DOT authority negligently to Mr. Ebaugh. But because Ms. Wallace mentions that Mr. Ebaugh operated the tractor-trailer rig under Mercer's DOT authority, the court notes that it "is highly skeptical that DOT authority is chattel within the

meaning of a negligent entrustment claim." *Sanchez v. S&H Transp., Inc.*, No. 20-cv-0374-CVE-SH, 2022 WL 1213127, *3 (W.D. Okla. Apr. 25, 2022). Thus, Mr. Ebaugh's operation under Mercer's DOT authority does not provide an alternative basis for a negligent entrustment claim against Mercer, and Mercer is entitled to summary judgment on the negligent entrustment claim.

2.    *Negligent Hiring*

Ms. Wallace does, however, attempt to refute Defendants' contention that no evidence shows Mr. Ebaugh's incompetence as required for the negligent hiring claim. Specifically, Ms. Wallace contends that Mr. Ebaugh's driving record contained prior violations that put Mercer on notice that Mr. Ebaugh was incompetent. (Doc. 54 at 6). The driving record Ms. Wallace cites includes six violations: a license suspension in May 2014, three speeding tickets from December 2013, February 2014, and July 2017, and two "improper equipment" violations for operating without required equipment from May 2018 and August 2018. (Doc. 54-5 at 1). Ms. Wallace also offers a report dated May 9, 2018 from the Federal Motor Carrier Safety Administration showing that Mr. Ebaugh had a December 2017 violation for "failure to obey [a] traffic control device." (Doc. 54-6 at 2). Finally, Ms. Wallace submitted an annual certification of violations that Mr. Ebaugh completed for Mercer that lists two speeding violations, one in May 2018 and the other in July 2018. (Doc. 54-8). However, the violation listed as July 2018

10

likely refers to the previously mentioned July *2017* ticket because the form is dated prior to July 2018.

Mercer does not argue that it was unaware of Mr. Ebaugh's record; rather, it responds that Mr. Ebaugh's record, while imperfect, was "more than sufficient to maintain a valid CDL [commercial driver's license]" and that Mr. Ebaugh's past violations were "a far cry from being sufficient to establish a genuine issue with regard to incompetence." (Doc. 36 at 24). Mercer cites *Craft v. Triumph Logistics, Inc.*, 107 F. Supp. 3d 1218, 1224-25 (M.D. Ala 2015), where the court found that the defendant's driving record, which included "several moving violations" did not create a genuine issue of material fact because they did not "establish the kind of 'habitual negligence' that amounts to incompetence." The court in *Craft* also cited a number of other precedents with similar findings that a small number of moving violations did not amount to incompetence. 107 F. Supp. 3d at 1225 (collecting cases).

The court first notes that Mr. Ebaugh's May 2014 license suspension is not relevant to his ability to operate a vehicle properly. Mr. Ebaugh explained at his deposition that the suspension resulted from his failure to report that he had completed a driving school requirement following a speeding ticket although he had in fact completed the class, and Ms. Wallace has not disputed that account. (Doc. 54-4 at 4). The suspension accordingly was "administrative in nature—not

related to [Mr. Ebaugh's] actual driving habits or abilities." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 414 (Ala. 2005). Similarly, without additional information regarding the "operating without required equipment" citations, Ms. Wallace has not provided a basis on which a jury could infer that these violations are indicative of habitual negligence or an inability to drive safely. The violations that remain, then, are four speeding tickets over the six-year period prior to the accident at issue in this case (one each in 2013, 2014, and 2017 and 2018) and the December 2017 "failure to obey [a] traffic control device."

These facts fall in between established precedents from the Supreme Court of Alabama. In *Thompson v. Havard*, 235 So. 2d 853, 857 (Ala. 1970), the court found a jury issue regarding competence where a driver had 11 moving violations over a period of about three years. Conversely, the court in *Thompson* quoted with approval a Texas case stating that "proof of only one previous traffic violation is grossly inadequate to establish incompetency or recklessness, and proof of two moving violations or accidents within a two year period prior to the accident made the basis of the suit, is probably insufficient," 235 So. 2d at 857 (quoting *Broesche v. Bullock*, 427 S.W.2d 89, 93 (Tex. Civ. App. 1968)) (internal citations omitted). The Supreme Court of Alabama likewise affirmed a grant of summary judgment appropriate where the plaintiff's only evidence of a driver's incompetence was two speeding tickets within five years of the accident and a DUI charge within ten

years of the accident. *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 51-52 (Ala. 1995).

District courts in this circuit applying Alabama law have gleaned from past precedents the principle that "several traffic violations do not establish habitual negligence if they occur under 'diverse circumstances.'" *Green v. Markovitch*, 385 F. Supp. 3d 1190, 1197 (N.D. Ala. 2019) (citing *Craft*, 107 F. Supp. 3d at 1225). "Instead, the kind of habitual negligence that amounts to incompetence under Alabama law includes situations where an employee engaged in the same negligent practice numerous times." *Green*, 385 F. Supp. 3d at 1197 (citing *Pritchett v. ICN Med. All., Inc.*, 938 So. 2d 933, 941 (Ala. 2006)). For example, the plaintiff had presented a genuine issue of material fact regarding competency by presenting evidence that the driver "had two DUI convictions, four accidents in the two years preceding [the accident at issue], and an admitted 'dependency' on [two medications]." *Hobbs v. U.S. Xpress, Inc.*, No. 18-cv-02129-LSC, 2021 WL 913398, *4 (N.D. Ala. Mar. 10, 2021).

Here, plaintiffs have presented evidence that Mr. Ebaugh was cited for speeding four times in the six years prior to the accident. The court finds this record closer to those at issue in cases where courts applying Alabama law have found the evidence insufficient to create an issue of fact regarding incompetence than to *Hobbs* or *Thompson*. Three of Mr. Ebaugh's four speeding convictions date

13

from July 2017 or earlier, leaving only one within the two years prior to the November 2019 accident. The Supreme Court of Alabama has stated that one violation in two years is "grossly inadequate" to establish incompetence. *Thompson*, 235 So. 2d at 857. Thus, Mr. Ebaugh's prior speeding tickets are insufficient to demonstrate incompetence here.

Ms. Wallace also argues that Mercer violated its own policy by hiring Mr. Ebaugh despite his prior speeding tickets. (Doc. 42 at 24-25). But an employer's policy is not the measure of competence; rather, "the incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford*, 921 So. 2d at 413-14. So, the court concludes that a reasonable jury could not find from Mr. Ebaugh's driving record that he was incompetent and will grant summary judgment for Mercer on the negligent entrustment claim.

C.   Damages for Treatment of Ms. Wallace's Lower Back

The final component of Defendants' summary judgment motion is a request that the court rule that Ms. Wallace cannot recover compensatory damages for treatment of her lower back. Defendants specifically request "an Order" excluding the cost of treatment for Ms. Wallace's lower back/lumbar spine from any damages she may recover. (Doc. 35 at 4). The court construes this request as an additional component of the summary judgment motion, consistent with Rule 56's provision that a party may seek summary judgment on any claim, defense or "part of [a]

claim or defense." Fed. R. Civ. P. 56(a). So, the court assesses this issue under the

same summary judgment rubric as the wantonness and negligent hiring and

entrustment claims, asking whether Ms. Wallace has demonstrated a genuine issue

of material fact regarding causation of her lower back injuries and viewing the

evidence in the light most favorable to Ms. Wallace.

Defendants acknowledge that one of Ms. Wallace's doctors, Dr. Robert

Agee, testified initially in his deposition that "it was his opinion within 'a

reasonable degree of medical certainty' that [Ms. Wallace's] condition was caused

by the subject accident." (Doc. 36 at 16; Doc. 35-5 at 8). But Defendants argue that

Dr. Agee had inadequate knowledge of Ms. Wallace's history of back problems

prior to the injury and argue that he later "qualified" his opinion by stating that Ms.

Wallace's back problems "may have been exacerbated" by the accident and

conceded that she may have needed surgery even if the accident had not occurred.

(Doc. 36 at 14-15).

A jury may or may not accept Dr. Agee's opinions, but his deposition

testimony establishes a genuine issue of material fact regarding causation. Dr.

Agee testified that he reviewed Ms. Wallace's medical records when he treated her

on December 7, 2019. (Doc. 35-5 at 4). At the December visit, he also ordered an

MRI of her lower back, which revealed "severe arthritis at [the third] level [of her

lower back] and a protruding disk that was pressing on the left L4 nerve root."

(Doc. 35-5 at 6). Dr. Agee testified that he believed with a reasonable degree of medical certainty that the disk protrusion was "caused by the November 18, 2019 motor vehicle accident." He subsequently referred Ms. Wallace to Dr. Spain Hodges, who recommended surgery. (Doc. 35-5 at 7). On cross examination, Dr. Agee acknowledged that an MRI from November 11, 2019, prior to the accident, showed "left disk protrusion compressing the left L4 nerve root." (Doc. 35-5 at 10). On re-direct, Dr. Agee appeared to clarify that the November 11, 2019 MRI showed that "there may be a bulge and some arthritis there, but not a protruding disk. That's what I saw as the difference from MRI to MRI." (Doc. 35-5 at 13).[2]

Defendants point to Dr. Agee's response "That may be correct, yes, sir" when asked whether Ms. Wallace's history would "make it very difficult to say this lady wasn't going to need a surgery regardless of whether she was involved in this accident." (Doc. 35-5 at 11). But Dr. Agee's full answer provides additional context:

> That may be correct, yes, sir. And you know, I think what I see from her MRI, you know, what stands out more is that *she also had that protruding disk on to the left which compresses onto the left L4 nerve root which, from what I heard on your previous MRI report, that looks somewhat new from the accident.* So I do think the arthritis was there

---

[2] Ms. Wallace's counsel, Doug Roy, initially asked Dr. Agee if a record from 2015 showed the left disk protrusion, to which Dr. Agee answered that he did not have records of 2015. Mr. Roy then asked, "The one that they mentioned, there was no mention in there of an L4 protrusion?" (Doc. 35-5 at 13). The court understands Mr. Roy's rephrased question to be referring to the November 11, 2019 MRI that defense counsel had asked Dr. Agee about during cross examination, particularly given its obligation to view all evidence in the light most favorable to Ms. Wallace as the non-movant on a summary judgment motion.

previously, even throughout all of the MRIs that were done, *but I think the newer thing was the protruding disk compressing on the left L4 nerve root which looked like it had gotten worse from her accident.*

But you are right, I mean, you can definitely have surgery from arthritis itself and she may have been headed that route from that standpoint. But I think the pain shooting down her legs and the compressing of that nerve may have quickened things and/or made, you know, this – her present to us with the pain that she was suffering from.

(Doc. 35-5 at 11) (emphasis added)

To be sure, a jury may or may not credit Dr. Agee's opinion that this accident caused some or all of the medical treatment that Ms. Wallace later received. But the court cannot say based on the evidence before it that Dr. Agee's testimony is so speculative that no reasonable jury could conclude that *any* of Ms. Wallace's treatment of her lower back was caused by the collision with Mr. Ebaugh.

Viewing the evidence in the light most favorable to Ms. Wallace and drawing all reasonable inferences from it, she has shown a genuine issue of material fact regarding causation of her lower back injuries. So, the court will deny Defendants' motion for summary judgment as to damages for treatment of Ms. Wallace's lower back.

## IV.    Conclusion

Ms. Wallace has not provided any evidence from which a jury could reasonably conclude that Mr. Ebaugh acted wantonly when he rear-ended her. Nor has she pointed to evidence that could support a finding that Mercer entrusted the

17

tractor-trailer rig to Mr. Ebaugh, or that Mr. Ebaugh was incompetent when Mercer engaged his services. So, the court will GRANT Defendants' motion for summary judgment on the wantonness, negligent entrustment, and negligent hiring claims. However, because Ms. Wallace has presented evidence sufficient to create a genuine issue of material fact regarding whether the accident caused some or all of the lower back injuries for which she received treatment, the court will DENY Defendants' motion as to damages related to those injuries.

**DONE** and **ORDERED** this 14th day of December, 2022.

_Karon O. Bowdre_
_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE